IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-02470-PAB-KLM

DR. BRADLEY BARNETT,

     Plaintiff,

v.

SUREFIRE MEDICAL, INC.

     Defendant.

---

## ORDER

---

This matter comes before the Court on Surefire's Motion for Summary Judgment [Docket No. 59], Plaintiff's Motion for Summary Judgment [Docket No. 62], and Surefire's Motion to Strike [Docket No. 74]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

This case involves a patented design for an anti-reflux catheter. *See* Docket No. 1 at 1.[1] Plaintiff Dr. Bradley Barnett ("Barnett") met Dr. Aravind Arepally ("Arepally") while Barnett was a medical student and Arepally was a professor at Johns Hopkins Medical Institute ("Johns Hopkins"). Docket No. 59 at 7, ¶ 4. Arepally sponsored Barnett's application for a research fellowship to study islet cell therapy and served as Barnett's mentor in 2005-06 and co-mentor in 2006-07. *Id*., ¶¶ 5-6.

Between late March and early July, 2007, Arepally was out of the country on

---

[1] All facts are undisputed unless otherwise noted.

sabbatical.  Docket No. 59 at 7, ¶ 8.[2]  While Arepally was on sabbatical, Barnett worked

with Dr. Jean-Francois Geschwind ("Geschwind") on an invention called the "Fusion

Drug Delivery System" ("FDDS").  Docket No. 59 at 8, ¶ 12.  Broadly speaking, the

FDDS is an "anti-reflux catheter" featuring "an expandable and retractable conical mesh

tip that can be configured to either allow blood to flow through it or to prevent retrograde

flow."  Docket No. 1 at 7, ¶ 18.  The FDDS is disclosed in Barnett's notebook and in a

"Report of Invention" submitted to Johns Hopkins' Office of Technology ("OTL").

Docket No. 59 at 6, ¶ 2.  Although Barnett's notebook contains others' handwriting,

Docket No. 66 at 5, ¶ 15, none of the pages in Barnett's notebook are witnessed.

Docket No. 59 at 8, ¶ 15.[3]  The "Report of Invention," as well as a subsequent

provisional patent application filed by OTL and Barnett, do not list Arepally as an

inventor, mentor, co-mentor, laboratory head, or otherwise identify him.  *Id*. ¶ 14.  After

the filing of the provisional patent application, there were no further attempts to patent

the FDDS by OTL or by Barnett.  *Id*. at 9, ¶ 18.[4]

In April 2009, Dr. James Chomas ("Chomas") began working on an anti-reflux

---

[2] The parties dispute whether Arepally communicated with Barnett regarding work at Johns Hopkins while on sabbatical.  Docket No. 66 at 4, ¶ 8; Docket No. 75 at 2, ¶ 8.

[3] Broadly speaking, a notebook page is "witnessed" when it is signed and dated (or otherwise authenticated) by an individual other than the notebook's author.  *See generally Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1377-78 (Fed. Cir. 1986).

[4] Barnett contends that "[t]he concepts of the FDDS were sought to be patented and in fact were patented by Surefire."  Docket No. 66 at 6, ¶ 18.

device.  Docket No. 59 at 9, ¶ 19.[5]  In July 2009, Chomas and Arepally cofounded defendant Surefire Medical, Inc. ("Surefire").  *Id*., ¶ 22.[6]  On December 2, 2009, Surefire filed a revised provisional patent application for an anti-reflux catheter design featuring an expandable and retractable mesh tip.  Docket No. 1 at 10, ¶ 25.  On July 2, 2010, Surefire filed a non-provisional patent application claiming priority from the revised provisional application and formally identifying Arepally as an inventor of the anti-reflux catheter design.  *Id.* at 11-12, ¶¶ 29-30.  On August 6, 2013, the U.S. Patent and Trademark Office issued U.S. Patent No. 8,500,775 (the "'775 Patent") from Surefire's non-provisional patent application.  *Id.* at 12, ¶ 30; Docket No. 1-3 at 2.  The '775 Patent describes a "protection device and method against embolization agent reflux" and lists Chomas, Arepally, Leonard Pinchuk, and John Martin as inventors.  Docket No. 1-3 at 2.  Surefire is listed on the patent as the "assignee."  *Id.*  Barnett has never met, communicated, or worked directly with any of the named inventors on the Surefire patents except for Arepally.  Docket No. 59 at 6, ¶ 3; Docket No. 66 at 4, ¶ 3.  Surefire subsequently obtained U.S. Patent Nos. 8,696,698, 8,696,699, 9,295,540, 9,069,341, and 9,089,668 (with the '775 patent, the "Surefire patents") for its anti-reflux device.  Docket No. 1 at 12, ¶¶ 30-31.  Barnett's retained expert, Dr. Robert Wagoner

---

[5] The parties dispute whether Chomas's work in April 2009 included developing prototypes.  Docket No. 66 at 6, ¶ 19.

[6] Barnett generally denies this fact on the basis that the statement Surefire relies upon "has no evidentiary value."  Docket No. 66 at 6, ¶ 22.  However, he cites to no evidence in the record disputing the factual statement and fails to explain why "the material cited to support . . . [the] fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Therefore, the facts are considered undisputed for purposes of the motion.  *See* Fed. R. Civ. P. 56(e); Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.

("Wagoner"), examined the '775 patent against the sketch made in Barnett's notebook and the Report of Invention made by Barnett and concluded that "the major part of the novel content and inventive leap [in the '775 patent] was in fact invented years earlier by Barnett." Docket No. 66-28 at 10, ¶ 79; *see also* Docket No. 66 at 10.[7]

On October 16, 2017, Barnett filed this lawsuit. Docket No. 1. The complaint brings six claims for correction of inventorship pursuant to 35 U.S.C. § 256 against Surefire, seeking to add Barnett as a named inventor on the Surefire patents, and a claim against Arepally for unjust enrichment. *Id*. at 18-29, ¶¶ 47-106. On September 23, 2017, the Court dismissed Barnett's claim against Arepally for unjust enrichment. Docket No. 50. On January 7, 2019, Surefire filed a motion for summary judgment on the six correction of inventorship claims. Docket No. 59. On January 11, 2019, Barnett filed a motion for partial summary judgment on Surefire's defense that Barnett's design is anticipated by or otherwise shown in the prior art. Docket No. 62. On February 11, 2019, Surefire filed a motion to strike certain exhibits supporting Barnett's response to the motion for summary judgment. Docket No. 74.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.

---

[7] Surefire disputes the Wagoner report on the basis that he is a retained expert on behalf of Barnett. Docket No. 75 at 6, ¶ 17.

*Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### III. ANALYSIS

### A.   Surefire's Motion for Summary Judgment

Surefire argues that it is entitled to summary judgment on all of Barnett's correction of inventorship claims because Barnett cannot establish that he collaborated with any of the named inventors on the Surefire patents.  Docket No. 59 at 11-18. Separately, Surefire argues that it is entitled to summary judgment on the question of damages because Barnett has no pathway to recover damages from Surefire through his correction of inventorship claims.  Docket No. 59 at 18-19.

#### 1.   Correction of Inventorship

Section 256 of Title 35 of the United States Code "provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed in the patent."  *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997).  As relevant here, § 256 addresses "nonjoinder" – "the error of omitting an inventor" from a patent.  *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 (Fed. Cir. 2019).

Because "'[c]onception is the touchstone of inventorship' . . . a joint inventor must contribute to the invention's conception."  *Id*. (quoting *Acromed Corp. v. Sofamor Danek Grp., Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001)).  There must also be "some quantum of collaboration" between the joint inventors.  *Id*. at 1359; *see also Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004) (noting that "the alleged joint inventor seeking to be listed on a patent must demonstrate that his labors were conjoined with the efforts of the named inventors").  "Individuals cannot be joint

inventors if they are completely ignorant of what each other has done until years after their individual independent efforts." *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co., Inc.*, 973 F.2d 911, 917 (Fed. Cir. 1992). "For persons to be joint inventors . . . there must be some element of joint behavior, such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting." *Id*.

"The determination of whether a person is a joint inventor is fact specific." *Fina Oil*, 123 F.3d at 1473. "[A] party alleging . . . non-joinder of inventors must meet the heavy burden of proving its case by clear and convincing evidence." *Eli Lilly*, 376 F.3d at 1358. A plaintiff's testimony regarding his or her own inventorship claim "is regarded with skepticism," *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993), and "cannot, standing alone, rise to the level of clear and convincing proof." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998). Thus, a plaintiff "must provide evidence to corroborate the alleged joint inventor's conception." *Eli Lilly*, 376 F.3d at 1358. "Physical, documentary, or circumstantial evidence, or reliable testimony from individuals other than the alleged inventor or an interested party, may corroborate" a plaintiff's testimony. *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1339 (Fed. Cir. 2005). Summary judgment may be granted where there is insufficient evidence to corroborate a plaintiff's claim of co-inventorship. *Stern v. Trs. of Columbia Univ.*, 434 F.3d 1375, 1377-78 (Fed. Cir. 2006) (affirming summary judgment where trial court determined that plaintiff failed to present clear and convincing evidence of inventorship).

Surefire moves for summary judgment on the basis that there is no evidence that Barnett collaborated with the named inventors, including Arepally, on the Surefire patents. Docket No. 59 at 12-13. Because it is plaintiff's burden to prove collaboration by clear and convincing evidence, the Court will grant summary judgment for Surefire unless Barnett can identify evidence of collaboration aside from his own testimony.

First, Barnett argues that there is direct evidence that Arepally was aware of Barnett's work on the FDDS. Docket No. 66 at 14-16.[8] Barnett contends that he and Arepally were in communication while Arepally was in Germany and that he kept Arepally aware of the projects on which he was working. *Id*. In support of this argument, Barnett offers declarations from Dr. Partha Hota ("Hota") and Dr. Jean-Francois Geschwind ("Geschwind"). Docket Nos. 66-1, 66-2. Surefire moves to strike the declarations on the grounds that Barnett failed to adequately disclose Hota or Geschwind in his Rule 26(a)(1)(A)(i) disclosures as persons who would corroborate his claim of joint inventorship. Docket No. 74 at 5-6.

Rule 26(a)(1)(A)(i) provides that, in its initial disclosures, a party "must" provide "the name . . . of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P.

_____

[8] Surefire's reply brief construes Barnett as arguing that the unwitnessed sketch of what became the FDDS that Barnett made in his personal notebook is corroborating evidence of collaboration with Arepally. Docket No. 75 at 7-8. The Court does not understand this to be Barnett's argument. *See* Docket No. 66 at 15 (arguing that "Geschwind's testimony corroborates Barnett's claims that Arepally knew of [the] FDDS"). To the extent that it is Barnett's argument, the argument fails, because "unwitnessed laboratory notebooks on their own are insufficient to support [a] claim of co-inventorship." *See Stern*, 434 F.3d at 1378 (citing *Hybritech*, 802 F.2d at 1378).

8

26(a)(1)(A)(i).  Once a party responds to discovery requests, the party is under a continuing obligation to "supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1).  "To satisfy the 'made known' requirement, a party's collateral disclosure of the information that would normally be contained in a supplemental discovery response must be in such a form and of such specificity as to be the functional equivalent of a supplemental discovery response; merely pointing to places in the discovery where the information was mentioned in passing is not sufficient."  *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1168-69 (D. Colo. 2015).

In his response, Barnett represents that he offers Hota's declaration solely to impeach Arepally.  Docket No. 81 at 9.  The Court cannot make credibility determinations on summary judgment; thus, the Court will not consider Hota's declaration.  *See Anderson*, 477 U.S. at 255 (noting that "[c]redibility determinations . . . are jury functions, not those of a judge").  As to Geschwind's declaration, Barnett argues that he adequately disclosed Geschwind to Surefire.  Docket No. 81 at 9-11. The Court disagrees.  Barnett's initial disclosures do not list Geschwind as an individual likely to have discoverable information.  *See* Docket No. 74-5.  In response, Barnett argues that he disclosed Geschwind as a witness in his final inventorship contentions and that Surefire's counsel knew of Geschwind.  Docket No. 81 at 9-11.  The Court is not persuaded that this is an adequate disclosure.  The only reference to Geschwind in

the final inventorship contentions is a statement that "Arepally was kept informed of Barnett's work with [Geschwind] in developing the Anti-Reflux Catheter and other 'release catheter designs.'" Docket No. 60-1 at 5. This statement is not "the functional equivalent of a supplemental discovery response;" it is more akin to a "place[] in the discovery where the information was mentioned in passing." *See L-3 Commc'ns*, 125 F. Supp. 3d at 1168-69. Barnett offers no authority supporting the position that this bare statement in final inventorship contentions relieves him of his disclosure obligations under Rule 26(a)(1)(A)(i). Thus, the Court will not consider Geschwind's testimony in order to corroborate Barnett's claims.

Second, Barnett argues that the report of Wagoner, his retained expert, is circumstantial evidence of collaboration. Docket No. 66 at 16. Wagoner examined the '775 patent against the sketch made in Barnett's notebook and the Report of Invention made by Barnett. Wagoner concludes that "the major part of the novel content and inventive leap [in the Surefire patents] was in fact invented years earlier by Barnett." Docket No. 66-28 at 10, ¶ 79. Wagoner further concludes that, based on his review of the '775 patent, the named inventors on the '775 patent "were well-aware of the Barnett invention and took steps to emphasize and distinguish their contributions in the '775 [p]atent." *Id*. at 8, ¶ 73. The Court finds that Wagoner's opinion is sufficient corroborative evidence to establish a genuine issue of material fact as to collaboration. Corroborating evidence may be in the form of "circumstantial evidence of an independent nature." *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1295 (Fed. Cir. 2008). Barnett testified at his deposition that he communicated his work on the FDDS to Arepally. *See* Docket No. 66 at 4, ¶ 3. While that testimony is not

10

enough to establish, by itself, that Barnett collaborated with Arepally, Wagoner's report corroborates Barnett's testimony by providing circumstantial evidence that Barnett's FDDS supplied the "inventive leap" in the Surefire patents. *See* Docket No. 66-28 at 10, ¶ 79. From this evidence, along with Barnett's evidence that Arepally and Barnett were exchanging emails (albeit on unrelated subjects) while Arepally was in Germany and Barnett was developing the FDDS, a reasonable jury could draw the inference that Arepally, a named inventor on the '775 patent, was aware of Barnett's invention (as disclosed in either the notebook sketch or in the Report of Invention) and therefore could determine that Barnett met his burden of proof that he collaborated with Arepally in the invention of the Surefire patents. *See* Docket No. 66 at 4, ¶ 8 (citing Docket Nos. 66-6 and 66-7); *see also Eli Lilly*, 376 F.3d at 1359 (explaining that joint inventorship can only occur "when the inventors have some open line of communication during or in temporal proximity to their inventive efforts").[9]

Other than noting that Wagoner has been retained on behalf of Barnett, *see* Docket No. 75 at 5-6, an irrelevant credibility consideration, Surefire does not argue that Wagoner's opinion is insufficient to defeat summary judgment. Surefire suggests that it is entitled to summary judgment on the basis that its theory – that Chomas developed the key features of the Surefire patents independently and without awareness of Barnett's FDDS – is "equally plausible" as Barnett's theory. *See* Docket No. 59 at 16

_____

[9] Although Barnett's claims suggest that Chomas "misappropriated and incorporated" the FDDS into the Surefire patents, the crux of Barnett's claims for correction of inventorship is not that Arepally stole his FDDS. *See* Docket No. 1 at 20, ¶ 58. Rather, Barnett contends that he contributed to the Surefire patents by communicating his FDDS invention to Arepally, who then disclosed it to Chomas for incorporation into the Surefire patents.

(quoting *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1308 (Fed. Cir. 2010)).  This argument fails to establish Surefire's right to summary judgment.  First, there is a dispute as to what role Arepally had in working with Chomas to develop Surefire's anti-reflux catheter.  *Compare* Docket No. 59 at 9, ¶ 20 (Surefire's statement that Arepally only became involved in Chomas's project after Chomas "had come up with the idea and had begun to work on prototypes"), Docket No. 66 at 6, ¶ 20 (Barnett arguing that "Chomas was introduced to and began speaking with Arepally before any anti-reflux prototypes were created"), *and* Docket No. 75 at 4, ¶ 20 (Surefire arguing that Barnett ignores testimony that Chomas began developing prototypes in early April 2009).  Moreover, even assuming Surefire's version of events, it is unclear to the Court why this would prove that Arepally did not introduce concepts from the FDDS to Chomas at some point before Surefire filed its patent application, as the parties seem to agree that Chomas did not have a finished prototype before he began to work with Arepally.  Finally, Surefire ignores the distinction between Barnett's burden of proof at summary judgment and his burden at trial.  *Vanderbilt* stands for the proposition that, if the parties' respective theories were "equally plausible" after trial, plaintiff has failed to carry its burden of proof of showing that it "contributed to the claimed invention with clear and convincing evidence."  *Vanderbilt*, 601 F.3d at 1308.  In response to Surefire's summary judgment motion, however, Barnett need show only that there is a genuine dispute of material fact from which the factfinder could conclude that he collaborated with at least one of the named inventors on the Surefire patents.  This Barnett has done through (1) his testimony that he communicated the FDDS to Arepally, (2) the circumstantial evidence offered by Wagoner that the FDDS supplied the "inventive leap" in the

12

Surefire patents, and (3) the evidence that Barnett and Arepally had an open line of communication at the time Barnett developed the FDDS. Because there is a genuine issue of material fact as to whether Barnett communicated his FDDS to Arepally before Surefire filed its patent application, the Court will deny Surefire's motion for summary judgment on the correction of inventorship claims.[10]

### 2.   *Damages*

"In the absence of any agreement to the contrary, each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the United States, or import the patented invention into the United States, without the consent of and without accounting to the other owners." 35 U.S.C. § 262. Barnett contends that he may obtain damages from Surefire on his correction of inventorship claims by establishing the existence of an agreement requiring one of the named inventors to account to Barnett for any profits obtained as a result of use of the Surefire patents. Barnett argues that both he and Arepally were bound by Johns Hopkins' "IP Policy," which states that Johns Hopkins is entitled to a portion of "cash royalties and/or equity holdings" from "Licensing Agreements" in technology developed at Johns Hopkins. Docket No. 66 at 19; *see also* Docket No. 66-11 (the IP Policy). Barnett claims that

---

[10] Barnett also argues that, even if Arepally was never aware of the FDDS, he was aware of Barnett's "Side Access Stent System" ("SASS") that "contained critical features that are fundamental to the Surefire [p]atents." Docket No. 66 at 16. Surefire moved to strike the report of the SASS, contending that Barnett failed to disclose the report as supporting his inventorship claims. Docket No. 74 at 5-7. Surefire further contends that Barnett is shifting his theory at the summary judgment stage. Docket No. 75 at 9. Because Barnett has shown a genuine dispute of material fact as to whether Arepally was aware of the FDDS, the Court need not reach Surefire's argument, and denies this portion of the motion to strike as moot.

Arepally conveyed the rights in Johns Hopkins technology – Barnett's FDDS – to Surefire, and that Barnett is the successor-in-interest to Johns Hopkins' rights in the FDDS under a later agreement (the "assignment of rights") that he signed with Johns Hopkins.  Docket No. 66 at 19; Docket No. 66-29.

The Court agrees with Surefire that Barnett does not have a pathway to recover damages.  The crux of Barnett's claims for correction of inventorship is that he collaborated with Arepally in the joint invention of the Surefire patents and should be given credit as a joint inventor, not that Arepally (and Surefire) infringed on some rights Barnett had in the FDDS.  The plain text of the correction of inventorship statute does not support an award of damages.  *See* 35 U.S.C. § 256(a) (providing for the issuance of a certificate correcting an error in named inventors).  Barnett's attempt to rely on *Ultra-Precision Mfg. v. Ford Motor Co.*, 411 F.3d 1369 (Fed. Cir. 2005), does not help him.  Barnett appears to acknowledge that *Ultra-Precision* requires an underlying claim, such as breach of contract, that would enable him to recover damages.  *See* Docket No. 66 at 20 (arguing that *Ultra-Precision* stands for the proposition that "had a contract claim been sustained, federal patent law would not have been a barrier to recovery under that contract").  Here, however, Barnett does not assert a claim for breach of contract.  Barnett fails to cite authority supporting his theory for an award of damages on a correction of inventorship claim.

Even assuming *arguendo* that Barnett's theory of damages is legally sound, Barnett has failed to demonstrate that there is a contractual basis for him to recover damages from Surefire.  There is no evidence in the record supporting the contention

that Arepally conveyed rights in the FDDS to Surefire by way of a "Licensing Agreement" under the Johns Hopkins IP Policy. Moreover, the Court is not persuaded that the assignment of rights stretches as far as Barnett would like. The assignment of rights explicitly states that "the intent and the effect of [the assignment of rights] is to transfer to [Barnett] only the rights . . . which [Barnett] originally had and which were transferred to [Johns Hopkins] by that [recipient]." *See* Docket No. 66-29 at 3-4, ¶ 1.1.1. Even assuming that Arepally was obligated to assign his rights in what became the Surefire patents to Johns Hopkins under the IP Policy, the assignment of rights does not support Barnett's right to obtain damages from Arepally or Surefire because whatever rights Johns Hopkins might claim in Arepally's work with Surefire remain with Johns Hopkins. *See id*. at 4, ¶ 1.1.3 ("If there are other Inventors of [the FDDS] . . . [Johns Hopkins] will retain all rights originally assigned to [Johns Hopkins] by those other Inventors."). Thus, there is no basis for Barnett to obtain damages on his correction of inventorship claims from Surefire through Arepally's contribution to the Surefire patents, and Surefire is entitled to summary judgment on the issue of damages.

### B.   Barnett's Motion for Partial Summary Judgment

Barnett moves for partial summary judgment on the "defense" raised by Surefire that Barnett's design is anticipated by or otherwise shown in the prior art. Barnett argues that it is Surefire's burden to establish that his contribution to the Surefire patents was disclosed in the prior art. *See, e.g.*, Docket No. 62 at 8 (arguing that "[i]n order to succeed in its prior art defense, Surefire must therefore show that a single prior

art reference discloses each and every element of Barnett's invention . . .").  However, whether or not Barnett's contribution was disclosed in the prior art is a portion of Barnett's claim, not an affirmative defense.  *See Acromed Corp. v. Sofamor Danek Grp., Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001) (noting that a person claiming to be a joint inventor must show that he did "more than merely explain to the real inventors well-known concepts and/or the current state of the art"); *see also* Docket No. 17 at 9-10, ¶¶ 103-107 (Surefire's affirmative defenses).

Barnett's motion focuses on Surefire's retained expert, Dr. Ziad Ali ("Ali").  Barnett claims that Surefire's prior art defense depends on Ali's testimony.  Barnett focuses on Ali's testimony that the FDDS was anticipated by two pieces of prior art, *Courtney* and *Eversull*.  *See* Docket No. 62 at 2.  Barnett believes that Ali's testimony is insufficient to demonstrate that Barnett's invention is anticipated by the prior art.  *See id.* at 10-18 (arguing that *Courtney* and *Eversull* do not disclose all elements of the FDDS).  Surefire, however, cites other parts of Ali's deposition which call Barnett's conclusions about Ali's deposition into question.  *See* Docket No. 71 at 13-17 (cataloguing Ali's testimony and conclusions that *Eversull* and *Courtney* "disclose[] each feature of [the FDDS]").  In this situation, the jury, not the Court, needs to determine what Ali believes and whether he has contradicted himself.  *See Tempo Lighting, Inc. v. Tivoli, LLC*, 742 F.3d 973, 977 (Fed. Cir. 2014) ("Anticipation and prior art teachings present questions of fact.").[11]  Thus, the Court will deny Barnett's motion for summary

---

[11] Barnett argues that Ali's opinions must be stricken as unreliable.  Docket No. 62 at 18-20.  Barnett's purported Rule 702 motion is deficient.  *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.G (noting that a motion to exclude expert testimony "shall identify with specificity each **opinion** the moving party seeks to

judgment.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Surefire's Motion for Summary Judgment [Docket No. 59] is

**GRANTED IN PART** and **DENIED IN PART**.  It is further

**ORDERED** that Plaintiff's Motion for Summary Judgment [Docket No. 62] is

**DENIED**.  It is further

**ORDERED** that Surefire's Motion to Strike [Docket No. 74] is **GRANTED IN**

**PART** and **DENIED AS MOOT IN PART**.

DATED September 30, 2019.

BY THE COURT:

_s/Philip A. Brimmer_____
PHILIP A. BRIMMER
Chief United States District Judge

exclude").