IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-02470-PAB-KLM

DR. BRADLEY BARNETT,

      Plaintiff,

v.

SUREFIRE MEDICAL, INC.,

      Defendant.

_____

**ORDER**
_____

This matter is before the Court on Surefire's Motion to Exclude Opinions of Plaintiff's Expert Dr. Robert H. Wagoner Pursuant to Federal Rule of Evidence 702 [Docket No. 114] and plaintiff's Motion to Exclude Testimony of Defendant's Expert, Dr. Ziad A. Ali [Docket No. 115].  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I.  BACKGROUND**

This case involves a patented design for an anti-reflux catheter.[1]  While plaintiff Dr. Bradley Barnett was a medical student at Johns Hopkins University in 2007, he worked on an invention called the "Fusion Drug Delivery System" ("FDDS").  Docket No. 88 at 2.  One of his mentors and supervisors at Johns Hopkins, Dr. Aravind Arepally, co-founded defendant Surefire Medical, Inc. ("Surefire") in 2009.  *Id*. at 1-3.  On August 6, 2013, the U.S. Patent and Trademark Office issued U.S.

_____

[1] The Court states only those facts necessary to resolve the instant motions.  A more detailed background can be found in the Court's order on the summary judgment motions.  *See* Docket No. 88.

Patent No. 8,500,775 (the "'775 Patent") to Surefire based on its application.  Docket No. 1 at 12, ¶ 30; Docket No 1-3 at 2.  The '775 Patent describes a "protection device and method against embolization agent reflux" and lists Dr. Arepally, James Chomas, Leonard Pinchuk, and John Martin as inventors.  Docket No. 1-3 at 2.  Surefire subsequently obtained U.S. Patent Nos. 8,696,698, 8,696,699, 9,295,540, 9,089,341, and 9,089,668 (with the '775 patent, the "Surefire patents") for its anti-reflux device.  Docket No. 1 at 12, ¶¶ 30-31.[2]

On October 16, 2017, Dr. Barnett filed this lawsuit.  Docket No. 1.  The complaint brings six claims for correction of inventorship pursuant to 35 U.S.C. § 256 against Surefire, seeking to add Dr. Barnett as a named inventor on the Surefire patents.  *Id*. at 20-29, ¶¶ 56-106.[3]  Dr. Barnett contends that the Surefire patents contain "the same basic design that Barnett developed with Arepally's knowledge."  *Id*. at 2.  Dr. Barnett demanded a jury trial "on all issues so triable."  *Id*. at 30.

Surefire moved for summary judgment on the correction of inventorship claims, arguing that Dr. Barnett could not establish that he collaborated with any of the named inventors on the Surefire patents.  Docket No. 59 at 11-18.  In response, Dr. Barnett argued, *inter alia*, that the expert report of Dr. Robert Wagoner provided circumstantial evidence of collaboration.  Docket No. 66 at 16.  The Court denied Surefire's motion on September 30, 2019, agreeing with Dr. Barnett that Dr. Wagoner's report was "sufficient

---

[2] Broadly speaking, an "anti-reflux catheter" is used to deliver drugs and/or other agents to specific places in the body while preventing "reflux" of those agents to parts of the body that are not targeted.  *See generally* Docket No. 1 at 5-7, ¶¶ 11-18.

[3] The complaint originally brought a claim for unjust enrichment against Dr. Arepally, which the Court dismissed.  *See* Docket No. 50.

corroborative evidence to establish a genuine issue of material fact as to collaboration"
when taken together with (1) Dr. Barnett's deposition testimony that he communicated
the FDDS to Dr. Arepally and (2) evidence that Dr. Barnett and Dr. Arepally had an
open line of communication at the time Dr. Barnett developed the FDDS.  Docket No.
88 at 10-11.  However, the Court granted Surefire summary judgment on the issue of
damages, concluding that a correction-of-inventorship claim does not support an award
of damages without some underlying claim that would enable a plaintiff to recover
damages.[4]  *Id*. at 14.

Following the Court's summary judgment order, Surefire moved to strike
Dr. Barnett's jury demand, arguing that, if damages are off the table, there is no right to
a jury trial on a correction-of-inventorship claim.  Docket No. 90.  In response, Dr.
Barnett moved for the use of an advisory jury pursuant to Fed. R. Civ. P. 39(c)(1).
Docket No. 97.  Surefire also moved for the Court to reconsider its order denying
summary judgment, arguing that the Court committed clear error in the order.  Docket
No. 94.  On September 28, 2020, the Court entered an order granting Surefire's motion
to strike plaintiff's jury demand, denying Surefire's motion for reconsideration, and
denying plaintiff's motion for a trial before an advisory jury.  Docket No. 134.

On April 27, 2020, plaintiff and defendant both filed motions to exclude opinions
of the other party's expert.  Docket Nos. 114, 115.  Defendant has filed a motion to
exclude opinions of plaintiff's expert, Dr. Wagoner.  Docket No. 114.  Plaintiff has
moved to exclude testimony of defendant's expert, Dr. Ziad A. Ali.  Docket No. 115.

---

[4] The Court also denied Dr. Barnett's partial motion for summary judgment.
Docket No. 88 at 15-17.

Both parties responded to the other's motion to exclude, Docket Nos. 118, 119, and filed replies to the responses.  Docket Nos. 124, 125.

## II.  LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area.  Rather, the Court must "perform[] a two-step analysis."  *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is qualified, the proffered opinions must be assessed for reliability.  *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

Rule 702 imposes on the district court a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).  To perform that function, the Court must "assess the reasoning and methodology underlying the expert's opinion,

and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). Where an expert witness relies on experience, the expert "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes). When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." *Daubert*, 509 U.S. at 597. It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the witness having appropriate qualifications and methods, the proponent of the witness's opinions must demonstrate that the process by which the witness derived his or her opinions is reliable. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008). "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

While the proponent of the challenged testimony has the burden of establishing admissibility, the proffer is tested against the standard of reliability, not correctness, *see*

*Allstate Sweeping, LLC v. City & Cnty. of Denver*, No. 10-cv-00290-WJM-MJW, 2011
WL 2173997, at *3 (D. Colo. June 2, 2011); the proponent need only prove that "the
witness has sufficient expertise to choose and apply a methodology, that the
methodology applied was reliable, that sufficient facts and data as required by the
methodology were used and that the methodology was otherwise reliably applied."
*Crabbe*, 556 F. Supp. 2d at 1221.

Assuming the standard for reliability is met, the Court must also ensure that the
proffered testimony will assist the trier of fact. *See Kumho Tire*, 526 U.S. at 156; *United
States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006). "Relevant expert
testimony must logically advance[] a material aspect of the case and be sufficiently tied
to the facts of the case that it will aid the jury in resolving a factual dispute." *United
States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (internal quotation marks and
citations omitted). In assessing whether expert testimony will assist the trier of fact, the
Court should also consider "whether the testimony 'is within the juror's common
knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a
witness's credibility.'" *Id.* at 476-77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

Because this case will be tried to the Court, "the usual concerns regarding
unreliable expert testimony reaching a jury obviously do not arise." *Atty. Gen. of Okla.
v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009). "[A] judge conducting a
bench trial maintains greater leeway in admitting questionable evidence, weighing its
persuasive value upon presentation." *Id.* at 780; *see Whitehouse Hotel Ltd. P'ship v.
Comm'r of Internal Revenue*, 615 F.3d 321, 330 (5th Cir. 2010) ("[T]he importance of

the trial court's gatekeeper role is significantly diminished in bench trials . . . because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence."); *see also In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) ("[T]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.") (quotation marks, citation, and alteration omitted).

## III.   ANALYSIS

### A.   Dr. Wagoner

Plaintiff intends to call Dr. Wagoner to testify in plaintiff's case-in-chief regarding whether Surefire's patents are based on Dr. Barnett's conception and the scope of the prior art.  Docket No. 108 at 24.  Plaintiff also intends to call Dr. Wagoner in plaintiff's rebuttal case to rebut Surefire's assertions regarding the prior art.  *Id.*

Defendant argues that Dr. Wagoner's opinions should be excluded based on the following: (1) Dr. Wagoner is not an expert in stents and related percutaneous medical device technology and should therefore not be permitted to testify about them; (2) Dr. Wagoner's opinion that Dr. Barnett should be listed as a joint inventor of the '775 patent is based on an incorrect legal standard; (3) Dr. Wagoner's conclusions regarding the '775 patent do not apply to any of Surefire's other patents; (4) Dr. Wagoner's opinion comparing Dr. Barnett's conception to prior art is unsupported and irrelevant; (5) Dr. Wagoner was not identified as a rebuttal expert during discovery and did not provide rebuttal opinions in his report; and (6) Dr. Wagoner's opinion that a person of ordinary skill in the art ("POSITA") would understand Dr. Barnett's invention

to operate as "dynamically moveable" is unsupported by the relevant literature.  Docket No. 114 at 15.

### 1. Dr. Wagoner's Qualifications[5]

Defendant argues that Dr. Wagoner lacks the relevant scientific, technical, or other specialized knowledge regarding stents and related percutaneous medical device technology and is therefore not qualified to testify as an expert in this case.  *Id*. at 5.  Specifically, defendant argues that Dr. Wagoner's expertise is in metallurgical and mechanical engineering and Dr. Wagoner has never designed a stent or other percutaneous device, taught a class on the design of such devices, or inserted or seen an insertion of such device into the body.  *Id.* at 4.

Plaintiff argues that Dr. Wagoner is qualified because Dr. Wagoner (1) obtained a B.S., M.S., and Ph.D. in metallurgical engineering; (2) has 38 years worth of experience, including "knowledge related to the mechanical and operative properties of devices including stents and other percutaneously introduced or minimally invasive medical devices constructed of various materials and knowledge related to the material and mechanical properties of a wide range of materials"; (3) has, since the mid-1990s, performed work that includes testing, consulting, and being an expert witness related to medical stents and percutaneous devices; (4) has performed expert-witness work in stent-related patent infringement cases since 2001; (5) has reviewed "hundreds of

---

[5] As referred to in this motion, a percutaneous medical device is a medical device that is implanted through the skin.  Docket No. 114 at 3 n.2.  A stent is a short narrow medical or plastic tube, often in the form of a mesh that is inserted in to the lumen of an anatomical vessel (such as an artery or bile duct) especially to keep a previously blocked passageway open, and could be an example of a percutaneous device.  *Id.* (citations and quotations omitted).

prior art references" in the field of stents and percutaneous medical devices; and (6) has "read widely" over the past four to five decades as part of his work on percutaneously administered devices.  Docket No. 118 at 4.

Pursuant to Rule 702, a witness may provide expert testimony only if that witness is qualified "as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702; *see also United States v. Dysart*, 705 F.2d 1247, 1252 (10th Cir. 1983).

The Court finds that Dr. Wagoner is sufficiently qualified to testify regarding stents and percutaneous medical devices.  While Dr. Wagoner's primary expertise is metallurgical and mechanical engineering, he also has experience with stents and percutaneous medical device technology.  Docket No. 114-2 at 15.  Dr. Wagoner has authored publications on the mechanical behavior of materials and, starting in 2001, has testified as an expert in stent-related patent infringement cases.  Docket No. 118-3 at 5-6, ¶ 12.  Dr. Wagoner has given depositions or testified as an expert witness 21 times since 1995, and approximately a third of those cases were related to stents and percutaneous medical devices.  Docket No. 118-3 at 129-134; Docket No. 114-1 at 4-5; Docket No. 114-2 at 21.  Such testimony included self-expanding and balloon-expandable stents made from a variety of materials, including alloys exhibiting elastic, plastic, and shape-memory behavior.  Docket No. 118-3 at 5-6, ¶ 12.

The Court finds that his experience is sufficient to qualify him as an expert in the field of stents and percutaneous devices.  Insofar as defendant's motion seeks to exclude Dr. Wagoner because he is not an expert in stents and related percutaneous medical device technology, Docket No. 114 at 3, the motion is denied.

9

### 2. Testimony that Dr. Barnett Should be Listed as a Joint Inventor of the '775 Patent

Defendant argues that Dr. Wagoner's testimony that Dr. Barnett should be listed as a joint inventor of the '775 patent is "legally erroneous" because Dr. Wagoner has not relied on any evidence of collaboration, which is required for joint inventorship. *Id.* at 5. "A joint inventor must contribute to the invention's conception" and there must be "some quantum of collaboration." *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 (Fed. Cir. 2019) (citations and quotations omitted). Defendant claims that Dr. Wagoner's opinion does not rely on any evidence of collaboration between Dr. Barnett and a named inventor. Docket No. 114 at 6.

Plaintiff responds by claiming that Dr. Wagoner considered Dr. Barnett's "final inventorship contentions," within which Dr. Barnett's work with Dr. Arepally was outlined, which is sufficient evidence of an "open line of communication." Docket No. 118 at 5. Plaintiff says that such communications are further corroborated by emails between Dr. Barnett and Dr. Arepally while Dr. Barnett was developing his designs. *See Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004); Docket No. 118 at 5. Plaintiff then argues that Dr. Wagoner examined the '775 patent, compared it to Dr. Barnett's disclosures and, based on the similarities, concluded that the major part of the inventive leap was conceived by Dr. Barnett years earlier. Docket No. 118 at 6.

The Court first addresses whether Dr. Wagoner considered evidence of collaboration in reaching his opinion on joint inventorship. Dr. Wagoner states in his

declaration[6] that he defines the "Barnett invention" by a drawing in Dr. Barnett's lab

notebook and the report of invention[7] ("ROI").  Docket No. 114-1 at 8, ¶ 24.  Plaintiff

does not argue that these two documents contain any evidence of collaboration.[8]  *See*

Docket No. 118 at 5-6.  Therefore, these documents do not show that Dr. Wagoner

relied on any evidence of collaboration for his joint inventorship opinion.

Plaintiff's argument that Dr. Wagoner reviewed Dr. Barnett's final inventory

contentions, which evidences an open line of communication, Docket No. 118 at 5, is

insufficient to show that Dr. Wagoner considered collaboration in reaching his joint

inventorship opinion.  Dr. Wagoner's declaration references this document and states,

"I note that the attorneys for Barnett have prepared 6 charts (Plaintiff's Final

Inventorship Contentions: Exhibits 1-6) corresponding to 6 of these patents with

---

[6] Dr. Wagoner prepared a 33 page declaration that serves as his expert report. Docket No. 114-1.

[7] The ROI is a form that Dr. Barnett submitted to Johns Hopkins' Office of Technology Transfer.  Docket No. 1-1.  The form is "to be completed and submitted . . . by anyone who believes they have developed a new invention."  *Id.* at 1.  Dr. Wagoner states that Dr. Barnett's ROI describes a new design for an infusion catheter.  Docket No. 114-1 at 10, ¶ 29.

[8] Plaintiff argues that, because Dr. Wagoner concluded that the named inventors on the '775 patent were "well-aware of the Barnett invention," this shows that Dr. Wagoner considered circumstantial evidence of collaboration.  Docket No. 118 at 6. However, in the portion of Dr. Wagoner's declaration plaintiff cites, Dr. Wagoner discusses how his three observations indicated to him that the named inventors were aware of the Barnett invention.  Docket No. 114-1 at 31, ¶ 73.  The three observations were (1) "the striking overall similarity of the Barnett and Surefire Inventions," (2) "the close appearance of the figures presented," and (3) "the remarkable level of detail (I might say minutiae) related to well-known, routine design choices presented in the specification of the '775 Patent."  *Id.* at 27, ¶ 68.  None of these observations indicate that Dr. Wagoner considered collaboration, circumstantial or otherwise, between Dr. Barnett and a named inventor.

associated claims and have identified the corresponding disclosures by Barnett.  I have reviewed these briefly and have noted no disagreement with the characterizations provided therein."  Docket No. 114-1 at 24, ¶ 64.  Dr. Wagoner does not discuss any collaboration between Dr. Barnett and Dr. Arepally when coming to his conclusion that Dr. Barnett is a joint inventor.  *See id.* at 27-33, ¶¶ 68-80 (comparing Barnett invention to Surefire patents and stating that "[i]n view of the foregoing, it is my opinion that the major part of the novel content and inventive leap represented in the '775 Patent was in fact invented years earlier by Barnett as disclosed in the Barnett Lab Note and Barnett ROI.").  Further, the fact that emails between Dr. Barnett and Dr. Arepally exist does not bear on Dr. Wagoner's joint inventorship opinion because plaintiff does not assert that Dr. Wagoner reviewed these emails or considered them in coming to his conclusion on joint inventorship.  *See* Docket No. 118 at 5.  Indeed, plaintiff admits that Dr. Wagoner determined that the major part of the inventive leap in the Surefire patents was invented by Dr. Barnett based on the similarities between the '775 patent and Dr. Barnett's lab notebook and ROI.  *Id.* at 6 ("Based on similarities between Dr. Barnett's disclosures and the Surefire Patents, Dr. Wagoner concluded that 'the major part of the novel content and inventive leap [in the Surefire Patents] was in fact invented years earlier by Barnett.'").

Because there must be "some quantum of collaboration" for joint inventorship, *CODA Dev. S.R.O.*, 916 F.3d at 1358, and Dr. Wagoner did not base his opinion on any evidence of collaboration, Dr. Wagoner may not testify on the ultimate issue of

joint inventorship.[9]  The Court grants this portion of defendant's motion and will exclude any opinion from Dr. Wagoner that Dr. Barnett should be listed as a joint inventor.[10]

### 3. Testimony Regarding Surefire Patents Besides the '775 Patent

Surefire argues that Dr. Wagoner's conclusion that his analysis applies equally to nine other Surefire patents should be excluded.  Docket No. 114 at 8.  Surefire argues that Dr. Wagoner's inventorship opinion regarding these patents should be excluded for the same reasons as his opinion on the '775 patent and because Dr. Wagoner fails to substantiate why his conclusions would apply to nine other Surefire patents, four of which are not at issue in this case.  *Id*; Docket No. 124 at 6 n.3.

Plaintiff argues that Dr. Wagoner compared the inventions described in the Surefire patents to Dr. Barnett's inventions.  Docket No. 118 at 6.  Inventorship analysis requires, first, the construction of each disputed claim to determine the subject matter encompassed, and second, a comparison of the alleged contributions of each asserted co-inventor with the subject matter of the correctly construed claim.

---

[9] In defendant's reply brief, defendant argues that Dr. Wagoner may not offer an opinion that Dr. Barnett was a joint inventor because it is a legal conclusion.  Docket No. 124 at 4.  Defendant does not make this argument in its opening brief and an argument raised for the first time in a reply brief is waived.  *See  M.D. Mark, Inc. v. Kerr–McGee Corp.,* 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.").  Moreover, the Court agrees, for other reasons, with defendant that Dr. Wagoner cannot offer an opinion on joint inventorship, rendering this argument moot.

[10] The Court notes that there are two elements of joint inventorship – conception and collaboration.  *CODA Dev. S.R.O.*, 916 F.3d at 1358.  The Court excludes Dr. Wagoner's opinion on joint inventorship because he did not consider any evidence of collaboration in coming to this conclusion.  However, this does not prevent Dr. Wagoner from testifying as to conception.

*Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1381-82 (Fed. Cir. 2004) (citing *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460-61 (Fed. Cir. 1998)).  Plaintiff argues that Dr. Wagoner completed this two step process and concluded that all of the patents "are based on the same design and principles of operation."  Docket No. 118 at 7.  Further, plaintiff states that Dr. Wagoner reviewed and agreed with six charts prepared by plaintiff's counsel ("Plaintiff's Final Inventorship Contentions").  *Id.*

The Court agrees with defendant: plaintiff has neither shown what the similarities between the patents are, nor why these similarities render Dr. Wagoner's analysis applicable to each of the nine other patents.  Plaintiff fails to identify anything more than conclusory statements by Dr. Wagoner that the other patents are similar and thus his analysis applies to them as well.  *See* Docket No. 118 at 6-7.  Moreover, plaintiff has not identified any reliable methodology that Dr. Wagoner followed to come to his determination that his analysis applies equally to the nine other patents.  A "striking overall similarity," Docket No. 118 at 7, is insufficient to show that Dr. Wagoner used reliable methodology to compare Dr. Barnett's invention to the "subject matter of the correctly construed claim."  *See Gemstar-TV Guide Int'l.*, 383 F.3d at 1382.  Plaintiff's contention that Dr. Wagoner's decision to apply his analysis to all of the Surefire patents is corroborated by the fact Dr. Barnett's contribution is "clearly present" in the Surefire patents, Docket No. 118 at 6, is similarly unavailing because it does not provide evidence of Dr. Wagoner's methodology.  Finally, there is no relevance to Dr. Wagoner offering opinions about four patents not involved in this litigation.  Therefore, the Court will exclude Dr. Wagoner's testimony on patents other

14

than the '775 patent.

### 4. Testimony Comparing Dr. Barnett's Conception to Prior Art

Plaintiff intends to offer Dr. Wagoner's opinion in plaintiff's case-in-chief regarding the scope and content of the prior art.  Docket No. 114 at 10.  Plaintiff also intends to call Dr. Wagoner as a rebuttal expert to Surefire's assertions regarding the prior art.  *Id*.  Surefire objects to this testimony based on lack of foundation and because plaintiff never identified Dr. Wagoner as a rebuttal expert during discovery. *Id.* at 10-11.  Additionally, Surefire argues that Dr. Wagoner should not be able to present an opinion on the "well-known, routine" design choices in the '775 patent because that would require a consideration of prior art and Dr. Wagoner is not providing an opinion on the validity of the Surefire patents.  *Id.*  Plaintiff counters that defendant's argument addresses neither methodology nor relevance, and is thus improper for a *Daubert* motion.  Docket No. 118 at 8.  Plaintiff also argues that Dr. Wagoner conducted an extensive analysis of the prior art, Surefire had adequate opportunity to cross-examine Dr. Wagoner, and Surefire put forward rebuttal expert testimony on prior art, indicating that it agrees that Dr. Wagoner presented direct testimony on the issue of prior art.  *Id.*    In his declaration, Dr. Wagoner states that he "did not perform a search or detailed analysis of the prior art with respect to the validity of the Barnett infusion catheter . . . .  Nonetheless, based on my knowledge of the literature of the percutaneous medical device field and on my review of the '775 Patent prosecution history, and particularly on the Notice of Allowance, I believe that the Barnett invention represents a new concept, an inventive leap."  Docket No. 114-1 at

15, ¶ 44.  Plaintiff argues that Dr. Wagoner's review of the '775 patent prosecution history, his knowledge of the literature, and his review of prior art references throughout his career is sufficient to show that his testimony is reliable.  Docket No. 118 at 8.

"When an expert's testimony is based on knowledge and experience, the proponent need only show that the testimony has a reliable basis in the relevant discipline" and that the opinion "fit[s] the facts of the case."  *Two Moms and a Toy, LLC v. Int'l Playthings, LLC*, No. 10-cv-02271-PAB-BNB, 2012 WL 5249459, at *5 (D. Colo. Oct. 24, 2012) (citing *Kumho*, 526 U.S. at 149-50)).  "Experts . . . who rely 'primarily on experience' must explain 'how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"  *Id.* (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment).  Dr. Wagoner does not do so.  While he explains his experience, *see* Docket No. 114-1 at 3-5 , ¶¶ 4-13, Dr. Wagoner does not connect this experience in a meaningful way to his opinion on prior art, stating only that his opinions are "based on [his] knowledge of the literature" and "review[ of] hundreds of prior art references . . . appearing in the public domain over the past 50 to 60 years."  *See, e.g., id.* at 5, ¶ 13; 15, ¶ 44.  He does not explain how his experience leads to his conclusions or how he applied his experience to the facts of this case.  *See generally id.*

Dr. Wagoner does discuss the prior art that the Patent Examiner distinguished during the '775 patent prosecution.  *Id.* at 26, ¶¶ 66-67.  Surefire argues that this is

insufficient because it pertains to the novelty of the '775 patent, not the novelty of Dr. Barnett's device.  Docket No 124 at 8.  The Court disagrees.  Dr. Wagoner concluded that the novel features of the '775 patent were an integrated filter-valve and a frustoconical configuration of the filter-valve, Docket No. 114-1 at 26, ¶ 67, and plaintiff claims that the frustoconical valve is one of his contributions to the '775 patent. Docket No. 115 at 8.  Therefore, the Court finds that Dr. Wagoner has demonstrated a sufficient foundation to testify on the prior art he identifies in his report – the *Lambrecht*, *Streeter*, *Allen*, and *Lu* patents – but that his testimony regarding any other prior art will be excluded.

Surefire argues that Dr. Wagoner should not be permitted to testify on the "well-known, routine design choices" of the '775 patent because that opinion necessarily considers prior art and is irrelevant.  Docket No. 114 at 10-11.  However, there is no indication that Dr. Wagoner based this opinion on prior art references as opposed to his knowledge generally.  Defendant cites no cases supporting the proposition that an opinion that design choices are well know or routine necessarily requires consideration of prior art.  *See id.*  Similarly, the fact that Dr. Wagoner does not provide an opinion on the validity of the Surefire patents does not mean that his testimony regarding design choices is irrelevant.  Dr. Wagoner's declaration states that he was surprised by the "remarkable level of detail (I might say minutiae) related to well-known, routine design choices presented in the specification of the '775 Patent."  Docket No. 114-1 at 27, ¶ 68.  This testimony is relevant despite the fact that Dr. Wagoner does not offer an opinion on validity.  Therefore, the Court denies this portion of defendant's motion.

Surefire's final argument regarding prior art is that Dr. Wagoner was never

17

identified as a rebuttal expert by plaintiff during discovery.  Docket No. 114 at 11.

Additionally, because "whether or not Barnett's contribution was disclosed in the prior

art is a portion of Barnett's claim, not an affirmative defense," Docket No. 88 at 16,

defendant claims that Dr. Wagoner was required to put forth any opinions on prior art

in his declaration.  Plaintiff responds that Dr. Wagoner's declaration contains opinions

on prior art, and that Surefire could not have put forth a rebuttal expert on prior art if

Dr. Wagoner was not providing direct testimony on the issue.  Docket No. 118 at 8.

Because the Court has concluded that Dr. Wagoner's declaration contained an

affirmative evaluation of the *Lambrecht*, *Streeter*, *Allen*, and *Lu* patents, Dr. Wagoner

would be permitted to give rebuttal testimony on this prior art.  However, Surefire's

expert, Dr. Ali, intends to give testimony regarding two different patents – *Eversull* and

*Courtney*.  Docket No 115-2 at 14-15, ¶¶ 47-48.  Given that Dr. Ali's declaration does

not discuss the prior art Dr. Wagoner is permitted to give testimony on, Dr. Wagoner

will not be permitted to give rebuttal testimony regarding prior art.[11]

---

[11] Defendant also argues that Dr. Wagoner was not disclosed as an rebuttal expert and so should be barred from testifying as one.  Docket No. 114 at 11.  Under Rule 37(c)(1), a party who fails to identify a witness as required by Rule 26(a) may not use the witness at trial unless the failure was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1).  This rule applies to rebuttal expert testimony that was not disclosed in compliance with Rule 26(a).  *Cook v. Rockwell Int'l Corp.*, 233 F.R.D. 598, 600 (D. Colo. 2005).  In determining whether the failure to disclose is harmless, the Court considers "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).  Plaintiff has not argued that the failure to disclose Dr. Wagoner as a rebuttal expert was substantially justified.  *See* Docket No. 118 at 8.  Plaintiff provides no explanation for his failure to follow the magistrate judge's orders and the Court find that the error was not harmless.  Therefore, Dr. Wagoner is prevented from giving rebuttal testimony for this reason as well.

Plaintiff's claim to the contrary – that Surefire could not put forth rebuttal testimony on prior art if Dr. Wagoner was not providing affirmative evidence on the issue, Docket No. 118 at 8 – is unpersuasive.  Surefire maintains that plaintiff's alleged contribution to the '775 patent was publicly available prior art, Docket No. 124 at 7, which Dr. Ali necessarily had to consider, despite Dr. Wagoner's lack of testimony on the issue, in order to determine that Dr. Barnett was not a joint inventor.  Docket No. 124 at 8; Docket No. 115-2 at 13, ¶ 41.  The Court agrees that, because the issue of prior art is relevant to the joint inventorship issue, Dr. Ali's consideration of prior art is not impermissible rebuttal testimony despite Dr. Wagoner's lack of testimony on the subject.

### 5. Testimony that as Person of Ordinary Skill in the Art Would Understand the Barnett Invention to be Dynamically Moveable

Surefire argues that Dr. Wagoner should not be permitted to present testimony that a POSITA would understand the Barnett invention to be "dynamically moveable," meaning that the valve can be manipulated to an open, closed, or intermediate position.  Docket No. 114 at 11-12.  Surefire argues the Dr. Wagoner lacks a sufficient basis to so opine, given that Dr. Wagoner did not review any relevant evidence before coming to this conclusion.  *Id.* at 12.

Dr. Wagoner based his opinion regarding dynamic movability on a drawing in Dr. Barnett's lab notebook and the ROI.  Docket No. 114-1 at 8, ¶ 24.  Surefire argues that these two documents are insufficient evidence for Dr. Wagoner's opinion that the Barnett invention is dynamically moveable because Dr. Wagoner does not support his opinion with medical literature, dictionaries, or other evidence.  Docket No. 114 at 12.

19

Surefire argues that Dr. Wagoner's two analogies – to a "Chinese handcuff toy" and an umbrella – are lacking in scientific rigor. *Id.* Further, Surefire claims that Dr. Wagoner did not consult the "instructions-for-use" document for WallStents,[12] which would have indicated that changing the relative position of "the pusher/wire/catheter and the outer catheter" should be done a maximum of three times, and Dr. Wagoner stated to the contrary that it could be done "as needed." *Id.* at 13. Plaintiff responds that Dr. Wagoner connected his expertise to Dr. Barnett's lab notebook drawing and ROI and arrived at a conclusion that accords with *Daubert*. Docket No. 118 at 9. Plaintiff argues that Dr. Wagoner used the toy and umbrella analogies as aids to the factfinder and did not rely on them in forming his opinion, Dr. Wagoner testified that the Barnett invention may only be moved a few times, depending on the procedure, and Dr. Barnett used a modified version of the WallStent in a prototype of his invention. *Id.* at 10.

The Court finds that Dr. Wagoner's opinion regarding dynamic movability lacks sufficient foundation and is therefore unreliable. Based on his examination of the ROI and Barnett lab notebook, Dr. Wagoner determined that a POSITA would be familiar with the mechanical operation of the Barnett invention because it was "based on simple principles" and because of experience with widely adopted WallStents. Docket No. 114-1 at 12, ¶ 37.

If an expert does not provide sufficient foundation for an opinion the Court may

---

[12] Defendant states that a WallStent is "a commercially-available medical device comprised of an implantable metallic stent and a delivery system." Docket No. 114 at 12 n.5. Dr. Wagoner states that a "WallStent is a wire mesh made of metal." Docket No. 114-1 at 28.

exclude that opinion.  *Cf. Crabbe*, 556 F. Supp. 2d at 1231 ("[W]ithout a description of the objective framework . . . applied and the manner in which it was applied, no reliable methodology has been articulated and without articulation, the Government has not established sufficient foundation for the opinion."); *Sprint Commc'ns Co. L.P. v. Vonage Holdings Corp*., 2007 WL 2572417, at *2 (D. Kan. Sept. 4, 2007) ("[A] conclusory statement devoid of factual or analytical support is insufficient to lay the proper foundation for the admission of [expert] testimony.").  Plaintiff does not explain how Dr. Wagoner's conclusion is supported by any literature or expound on Dr. Wagoner's methodology besides stating that Dr. Wagoner evaluated the Barnett lab notebook and ROI "in light of his experience."  *See* Docket No. 118 at 9.

To the extent Dr. Wagoner relies on his experience to reach his conclusions on dynamic movability, Rule 702 requires that he "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  *United States v. Fredette*, 315 F.3d 1235, 1240 (10th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment).  Dr. Wagoner does not explain how his experience is reliably applied to the facts.  The Court finds that Dr. Wagoner's opinion regarding dynamic movability is not supported by sufficient foundation, and the Court excludes it.

### B.  Dr. Ziad Ali

The party moving to exclude expert testimony must "identify with specificity each **opinion** the moving party seeks to exclude" and "identify the specific ground(s) on which each opinion is challenged, e.g., relevancy, sufficiency of facts and data,

methodology."  Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer,

§ III.G.  The opinions plaintiff seeks to exclude represent the entirety of Dr. Ali's

testimony, which can hardly be considered a "specific" objection.  *See* Docket No. 108

at 25.  The Court has already made plaintiff aware of this practice standard.  *See*

Docket No. 88 at 16 n.11 ("Barnett argues that Ali's opinions must be stricken as

unreliable.  Docket No. 62 at 18-20.  Barnett's purported Rule 702 motion is deficient.

*See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer § III.G.").

Nevertheless, the Court will consider the specific arguments plaintiff makes.  Plaintiff

moves to exclude the testimony of Surefire's expert witness, Dr. Ziad Ali, regarding Dr.

Barnett's conception of an anti-reflux catheter, Dr. Barnett's contribution to the patents-

in-suit, and the scope and content of the prior art because Dr. Ali bases these opinions

on flawed methodology that he applies to insufficient facts.  Docket No. 115 at 1.

Surefire intends to call Dr. Ali as a rebuttal witness.  Docket No. 119 at 6.

Rebuttal evidence is evidence that is "intended solely to contradict or rebut evidence

on the same subject matter identified by another party."  Fed. R. Civ. P. 26(a)(2)(D)(ii).

"[R]ebuttal reports are by nature responsive and necessitate a showing supporting the

opposite conclusion of those which the opposing party's expert arrived at in his report."

*Brandt v. Honnecke*, No. 15-cv-02785-RM-NYW, 2018 WL 4588245, at *1 (D. Colo.

Sept. 25, 2018) (citing *103 Investors I*, 372 F.3d at 1217-18 (expert report proper

rebuttal where "its main thrust was to rebut" opposing expert's assertions)).

### 1. Testimony on Dr. Barnett's Contribution to the Patents-in-Suit

Plaintiff argues that Dr. Ali employed a flawed methodology when examining Dr.

Barnett's contribution to the patents-in-suit, rendering his opinion unreliable.  Docket No. 115 at 7.  Surefire responds that plaintiff has not show that Dr. Ali should have followed plaintiff's asserted methodology, Dr. Ali focused on the same pieces of evidence as Dr. Wagoner – the Barnett lab notebook and ROI, and Dr. Ali relied on his expertise in forming his opinions about Dr. Barnett's device.  Docket No. 119 at 7.

Inventorship analysis requires, first, the construction of each disputed claim to determine the subject matter encompassed, and second, a comparison of the alleged contributions of each asserted co-inventor with the subject matter of the correctly construed claim.  *Gemstar-TV Guide Int'l., Inc.*, 383 F.3d at 1381-82 (citing *Ethicon, Inc.*, 135 F.3d at 1460-61).  "To determine whether [a purported co-inventor] made a contribution to the conception of the subject matter of [a] claim [], th[e] court must determine what [the purported co-inventor's] contribution was and then whether that contribution's role appears in the claimed invention."  *Ethicon*, 135 F.3d at 1461.  Plaintiff argues that Dr. Ali failed to follow this framework, which renders his testimony on Dr. Barnett's contribution to the patent claims unreliable.  Docket No. 115 at 7.  Specifically, plaintiff argues that Dr. Ali did not review the patent file histories and ignored the actual inventions claimed in the Surefire patents.  Docket No. 125 at 3-4.

The Court disagrees with plaintiff's contention that "Ali completely ignore[d] the actual inventions claimed in the Surefire Patents."  Docket No. 115 at 8.  Dr. Ali stated in his declaration that he reviewed the '775 patent and his statement that "[e]ach claim of the '775 patent requires 'a substantially frustoconical valve' or 'a substantially frustoconical integrated filter-valve'" is followed by a citation to three of the '775 patent claims.  Docket No. 115-2 at 7, ¶ 15; 16, ¶ 49.  Plaintiff states that, in his deposition,

23

Dr. Ali could not identify the inventions of the Surefire patents. Docket No. 115 at 8. These sections of Dr. Ali's deposition do not have the weight plaintiff places on them. For instance, plaintiff cites Dr. Ali's deposition at 84:4-15, Docket No. 115 at 8, where Dr. Ali stated that he could not say the title of the '775 patent captured the entirety of the '775 patent invention. Docket No. 115-3 at 43, 84:4-15. However, Dr. Ali's testimony after the portion cited to by plaintiff reveals that Dr. Ali read the '775 patent for the purposes of preparing his report and declined to come to a conclusion on what the invention claimed in the '775 patent is because he is not a patent attorney. *Id.* at 43-44, 84:21-25 to 85:1-3.

Plaintiff argues that Dr. Ali failed to consider Dr. Barnett's contribution to a frustoconical member, which is present in both the ROI and '775 patent. Docket No. 115 at 10. Dr. Ali stated that he considered the '775 patent, Dr. Barnett's lab note, and ROI; each claim of the '775 patent describes a frustoconical valve or substantially frustoconical integrated filter-valve; and Dr. Ali concluded that the device described by the Barnett lab note and ROI did not contain a valve. Docket No. 115-2 at 17-18, ¶ 49.

The Court concludes that Dr. Ali sufficiently reviewed the relevant facts and data (e.g., the '775 patent, Barnett lab note, and ROI), determined what Dr. Barnett's contribution was, and "whether that contribution's role appears in the claimed invention." *Ethicon*, 135 F.3d at 1461. Dr. Ali determined what a POSITA would have understood the Barnett lab note and ROI to describe and found that the device disclosed by the Barnett lab note and ROI were publicly available before May 18, 2007. Docket No. 115-2 at 13-14, ¶¶ 43-45. Plaintiff may disagree with Dr. Ali's conclusions, but plaintiff cannot exclude Dr. Ali's testimony regarding Dr. Barnett's

24

contribution to the Surefire patents for lack of reliable methodology.

### 2. Testimony on Dr. Barnett's Conception of an "Anti-Reflux Catheter"

Plaintiff argues that the Court should exclude Dr. Ali's testimony that Dr. Barnett did not contribute to the conception of an anti-reflux catheter. Docket No. 115 at 11. Specifically, plaintiff argues that Dr. Ali did not consider the presence of "the frustoconical element resulting from Dr. Barnett's modification of the stent" in either examples of prior art Dr. Ali examined, Dr. Ali did not consider whether the elements he identified in Dr. Barnett's contribution were arranged in the same configuration in prior art, and Dr. Ali did not consider the novelty of Dr. Barnett's contribution in combination with the remaining elements of the Surefire patents. *Id.* at 11-12. Plaintiff maintains that Dr. Ali's testimony is based on insufficient facts and a legally incorrect premise. *Id.* at 11. In plaintiff's motion for summary judgment, plaintiff argued that Dr. Ali's opinions on prior art showed that Dr. Barnett's invention was not disclosed in the prior art. Docket No. 62 at 8-18. The Court rejected plaintiff's argument because of other evidence in Dr. Ali's deposition that supported Dr. Ali's conclusion that the prior art disclosed each feature of Dr. Barnett's device. Docket No. 88 at 16.

Similarly, the Court finds that Dr. Ali based his opinions of Dr. Barnett's lack of conception on sufficient facts or data. Dr. Barnett argues that Dr. Ali did not find the frustconical element in either the *Courtney* or *Eversull* patents, the two patents he considered for prior art. Docket No. 115 at 11-12. Plaintiff cites to a portion of Dr. Ali's deposition where Dr. Ali stated that all the elements of Dr. Barnett's invention were not found in either *Eversull* or *Courtney*, standing alone. Docket No. 115-3 at 55-56,

126:22-25, 127: 1-25.  Dr. Ali states in his declaration that both *Eversull* and *Courtney* disclose each feature of Dr. Barnett's device.  Docket No. 115-2 at 14, ¶ 47, 16 ¶ 48. When asked in the deposition, "is there a frustoconical member disclosed in *Eversull*," Dr. Ali responded, "[t]here is."  Docket No. 115-3 at 20, 51: 11-13.  In resolving plaintiff's motion for summary judgment, the Court found that whether Dr. Ali contradicted himself was an issue for the fact-finder.  Docket No. 88 at 16.  The Court reaches the same conclusion here.  Plaintiff has identified a possible contradiction in Dr. Ali's deposition testimony; plaintiff has not rebutted Surefire's showing that Dr. Ali's opinion is based on sufficient facts.

Plaintiff argues that Dr. Ali applied the incorrect law of joint inventorship.  Docket No. 115 at 12-13.  Dr. Ali relied on the standard that a "contribution of information in the prior art cannot give rise to joint inventorship."  Docket No. 115-2 at 8, ¶ 24. Surefire argues that this is the correct standard because it is a quotation from *Eli Lilly*, 376 F.3d at 1362.  Plaintiff states that *Eli Lilly* is distinguishable because it was undisputed that the compound at issue in that case was known in the prior art.  Docket No. 125 at 5.  Plaintiff contends that while a contribution of *information* in the prior art cannot give rise to joint inventorship, *devices* can.  *Id.* at 6.  Surefire also cites *Tavory v. NTP, Inc.*, 297 F. App'x 976, 980 (Fed. Cir. 2008) (unpublished), where the court stated that "[a]n invention may be novel and non-obvious as a whole and yet be a combination of elements that are all individually well-known in the prior art by skilled artisans."  *See* Docket No. 119 at 12.

"To constitute a joint invention, it is necessary that each of the inventors work on

26

the same subject matter and make some contribution to the inventive thought and to the final result." *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1302 (Fed. Cir. 2010) (quoting *Monsanto Co. v. Kamp*, 269 F. Supp. 818, 824 (D.D.C. 1967)). "[T]he qualitative contribution of each collaborator is the key – each inventor must contribute to the joint arrival at a definite and permanent idea of the invention as it will be used in practice. The interplay between conception and collaboration requires that each co-inventor engage with the other co-inventors to contribute to a joint conception." *Id.* at 1303 (internal quotations and citations omitted).

Plaintiff argues that because Dr. Ali did not consider whether Dr. Barnett's invention was "covered by a combination of the asserted prior art in a way that was nonobvious to a person of ordinary skill," Dr. Ali has no basis to conclude that Dr. Barnett's design, when combined with the remaining elements, was known in the prior art. Docket No. 115 at 12-13. Plaintiff does not argue that Dr. Ali gives any opinions on whether Dr. Barnett's device, when combined with the remaining elements of the Surefire patents, was known in the prior art. Docket No. 115 at 13. However, the fact that Dr. Ali does not offer an opinion on whether Dr. Barnett's invention is prior art in combination with the other elements of the Surefire patents is not a reason to exclude all of Dr. Ali's testimony on prior art. Instead, it simply constitutes a limitation on the materiality of his testimony on the inventorship issue.

### 3. Testimony Regarding the Scope and Content of Prior Art

Plaintiff argues that Dr. Ali cannot give testimony regarding the scope and content of prior art that is helpful. Docket No. 115 at 13. Plaintiff argues that because

the Surefire patents are a combination of elements that were individually known in the prior art and the combinations that go beyond the prior art are noted by the allowances given by the U.S. Patent and Trademark Office, Dr. Ali's testimony about the scope of prior art will not be helpful. *Id*. at 14. The Court disagrees. The Patent Examiner issued a notice of allowability wherein the Examiner gave reasons for an allowance and discussed the prior art of the *Lambrecht*, *Streeter*, and *Allen* patents. Docket No. 115-5 at 5-6. However, Dr. Ali examined the *Eversull* and *Courtney* patents. Docket No. 115-2 at 14, ¶ 46. Whether Dr. Barnett's device was disclosed in the *Eversull* and *Courtney* patents is relevant to Dr. Barnett's claim for joint inventorship. Therefore, the Court finds that Dr. Ali's opinions regarding the scope of the prior art are relevant and potentially helpful.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that Surefire's Motion to Exclude Opinions of Plaintiff's Expert Dr. Robert H. Wagoner Pursuant to Federal Rule of Evidence 702 [Docket No. 114] is **GRANTED IN PART** and **DENIED IN PART**. It is further

**ORDERED** that plaintiff's Motion to Exclude Testimony of Defendant's Expert, Dr. Ziad Ali [Docket No. 115] is **DENIED**.

DATED March 16, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

28